## FORD *v.* HOLDEN.

If the abatement of taxes by the selectmen, at the request of the person against whom they are assessed, is to be considered an excusing from paying taxes, within the meaning of the clause of the constitution which excludes from voting paupers and persons excused from paying taxes at their own request, it operates only to disqualify him as a voter during the political year for which the taxes were assessed, and not as a perpetual disfranchisement.

Where the selectmen, in revising the check-list, refuse to insert the name of a person applying, until he shall pay the amount of taxes assessed against him in previous years and thus abated, the money so paid may be recovered back in an action for money had and received, against the selectman into whose hands it was paid, notwithstanding the person applying had no right to vote on other grounds, and the selectmen acted honestly and without corrupt motive; and although, before suit brought or demand made for the money, it had been paid into the town treasury as money belonging to the town.

If a demand before suit brought is necessary in such case, it is sufficient if made by the attorney retained to commence the suit.

ASSUMPSIT, for money had and received. Plea, the general issue. The following facts appeared on trial. At the time of the presidential election in 1856 the plaintiff was a citizen and resident of the town of Rumney, entitled to vote there at that election unless disqualified

by having had his taxes abated for the years 1852, 1853, 1854, 1855, and 1856, which taxes were duly assessed, and had been abated at his written request. The defendant, at the time of the election and during that year, was one of the three selectmen of Rumney. On the morning of election day, the three selectmen met for the purpose of revising the check-list. The plaintiff's name was not on the list, and he requested the selectmen to put it on, addressing himself particularly to the defendant. The defendant, in the presence and hearing of the other select-men, refused to put the plaintiff's name on the list, unless he first paid the amount of his taxes for the years 1852, 1853 and 1854. The plaintiff thereupon paid into the hands of the defendant the amount of the taxes which were assessed against him in those three years, and his name was thereupon put on the check-list by the select-men. The plaintiff, in order to have his name on the check-list, and to exercise the right of voting at that election, was compelled to pay said taxes by the said refusal of the defendant and the other selectmen, but in making said refusal the defendant and the other selectmen acted honestly and without corrupt motive.

After the money was paid into the hands of the defendant by the plaintiff, on the same day, and before any demand was made therefor of the defendant by the plaintiff, or on his account, the defendant paid the money into the hands of the town treasurer, as money belonging to the town, and the town treasurer, on the same day, and before any such demand, entered the same to the credit of the town, on his account with the town. The taxes for the years 1855 and 1856 were not demanded by the defendant nor received by him.

The plaintiff placed his claim for the money so paid in the hands of an attorney for collection, and the attorney, before the commencement of this suit, demanded the money of the defendant, who refused to pay it.

Ford *v.* Holden.

Upon these facts the court ruled that the plaintiff was entitled to recover of the defendant the amount so paid by the plaintiff into his hands; to which ruling the defendant excepted.

*J. Clark,* for the plaintiff.

*Quincy,* for the defendant.

1. The plaintiff cannot maintain an action for money had and received, inasmuch as the defendant had no money in his hands which, in equity and good conscience, he ought to pay to the plaintiff. 2. If any can be maintained on the facts, it must be a special action on the case against the whole board of selectmen. 3. The payment by the plaintiff was voluntary, with a knowledge of all the facts. It was not extorted, by duress of person or property, and therefore cannot be recovered back. *Benson* v. *Moore,* 7 Cush. 131, and authorities there cited. 4. The plaintiff acquired no right to vote by the payment of the taxes, as stated in the case, and was deprived of no right which he had to have his name inserted, by being requested to pay. Compiled Statutes, chap. 25, sec. 3 ; Laws of 1847, chap. 492, sec. 2. 5. The taxes of the plaintiff having been abated, at his request, for the year in which he requested to have his name inserted on the list, he thereby abandoned and gave up his right of suffrage for that year, which right he could not regain by the payment of the taxes abated. The act of 1847 conflicts with the Constitution, section 28, and is void. 6. The demand was insufficient. *Whittier* v. *Johnson,* 38 N. H. 160.

SAWYER, J. The provision of section 1, chapter 24, of the Revised Statutes, which defines the persons who are legal voters, is enacted in the words of the Constitution, art. 28, part 2, which declares that every male inhabitant

of twenty-one years of age and upwards, excepting paupers and persons excused from paying taxes at their own request, shall have the right to vote. What is meant by a person's being excused from paying taxes, has never been determined, so far as I have been able to ascertain, by judicial interpretation of this clause of the Constitution, nor directly declared by enactment of the legislature. By the act of 1847, chap. 492, sec. 2, which declares that no legal voter shall be deprived of his right to vote, by reason of his having requested that his taxes might be abated or remitted, or by reason of the abatement or remission, provided he shall, before he offers to vote, tender the payment of all taxes assessed against him during the year prior to his offer to vote, it would seem to be implied that the abatement or remission of the taxes by the local authorities, at the party's request, is an excusing from payment, within the meaning of this provision of the Constitution. Such has undoubtedly been the general understanding, at least since 1827, when this provision first became a statutory enactment of the legislature. N. H. Laws (1830) 451. Down to that time the act of February 8, 1791, passed under the Constitution of 1783, and in the words of that Constitution, declaring that every male inhabitant, of twenty-one years of age and upwards, paying a poll-tax for himself, should have the right to vote, remained upon the statute-book unrepealed in terms, though probably annulled and superseded by the operation of the provisions of the present Constitution, adopted in 1792.

Assuming that such abatement or remission of the tax is to be regarded as an excusing from payment, within the meaning of the Constitution, it is clear that it cannot have the effect to annul the right to vote beyond the political year for which the tax abated was assessed, even in the absence of any statutory provision to that effect. The meaning of the constitutional provision cannot be held to

Ford *v.* Holden.

be that by requesting an abatement of the taxes for a single year, or for any given number of years, and their abatement accordingly, the party is forever disfranchised. The obligation to pay the taxes assessed at the general taxation for the year, and the right to vote, are to be considered in this respect as correlative, and the denial of the right to be limited to the time for which the taxation was made. It can be limited to no other time, upon any satisfactory grounds. It would seem to be quite consistent and proper that the effect of the abatement of taxes which are to be annually assessed, upon the right to vote under which the political power is annually exercised for raising the tax, should be thus limited to the year. If not so limited, it must be a perpetual disfranchisement. The act of 1847 recognizes this limitation, by requiring the payment only of the taxes assessed during the year preceding the election, in order to restore the right to vote.

If, then, the abatement of the taxes in this case for the years preceding 1856 had the effect to deprive the plaintiff of his right of suffrage during those years respectively, it in no way affected his right at the November election in 1856. There was no ground, either connected with his right of suffrage at that election, or independent of it, upon which the payment of the taxes assessed in the years 1852–1854, inclusive, could be required of him, either by the town, their collector, or the selectmen in the capacity of their agents or as supervisors of the check-list and judges of the qualifications of voters in town. The taxes had been abated, and the effect of the abatement was to extinguish them. There was no longer any claim or liability on account of them, nor any way to enforce them. The defendant, either alone or in conjunction with his associates, had no authority to demand them, or to make their payment a condition upon which the insertion of the plaintiff's name in the check-list was to depend. Upon every view that can be taken of the case

the plaintiff should have his remedy to recover back the money. He did not part with it voluntarily. It was not, indeed, extorted from him literally by duress of person or property, but it was by withholding from him his right. It is suggested by the counsel for the defendant that he had no right to have his name placed upon the list, with or without the payment of this money, inasmuch as the taxes for that year had been abated at his request, and had not been paid, and the payment of them, if made in accordance with the act of 1847, would not restore the right of which he was deprived by virtue of the constitutional provision. But if the right to vote cannot be said to have been withheld from him until he paid the money, he had the right to have the adjudication of the selectmen directly upon the question whether, in case his right to vote should be denied on the ground of the abatement of his taxes for 1856, his payment of them then would not restore the right, agreeably to the act. It is to be presumed that if the selectmen had declined to insert his name on the list solely on the ground that the taxes for 1856, abated at his request, had not been paid, he would have paid them, and thus placed himself in a position to demand of them an adjudication of that question. They waived this and all other grounds of objection to his right to vote, except only the non-payment of the taxes for the three preceding years. These being paid, they acknowledged and recognized his right to vote. The payment was equally compulsory, whether it was made to obtain a right which they—the judges of his qualifications for the time being, and, as such, having the power to exclude or admit—erroneously accorded to him, acknowledging it to be his on every other ground; or whether it was made to obtain a right given to him by the law, from which they could not legally debar him. They were public officers, acting in their official capacity. As such they declared the law for the time in reference to his qualifications as a

Ford *v.* Holden.

voter. They withheld from him what they, as judges, having the power to exclude or admit, acknowledged to be his right on all other grounds, until he paid the money, which they had no right to require. It is immaterial, therefore, whether, with or without the payment of the tax of 1856, he would or not have been entitled to vote.

The money cannot be understood to have been received upon any consideration, or as the basis of an adjustment between two parties of their conflicting claims. The transaction cannot assume the character of a negotiation between two parties. It is the case of the exercise by the selectmen of their official power to obtain money from the plaintiff, which they honestly supposed they were entitled to demand as a condition precedent to their inserting his name upon the list, but to which by law neither they as selectmen nor the town were entitled, and the payment of which they had no authority to require, either in the capacity of agents of the town, or in the higher character of public officers, clothed with authority to decide upon the qualifications of their fellow-townsmen as voters.

It would be strange, indeed, if the party from whom the money was thus extorted could have no remedy at law to recover it back. It was paid into the hands of the defendant, and upon receiving it he held it as money received by him to the plaintiff's use. His liability to account for it as money so received, is in no way affected by the fact that he afterwards delivered it over to the town treasurer as money belonging to the town.

If any previous demand for the money was necessary to the maintenance of the action, it could be made by the authorized agent of the plaintiff as well as by the party himself. By placing his claim in the hands of an attorney for collection, he constituted the attorney his agent to make the demand. In *Whittier* v. *Johnson*, 38 N. H. 160, cited on this point by the defendant's counsel, it was held that a demand made by the attorney by letter, when

the attorney's place of business was at the distance of several miles from the residence of the party on whom the demand was made, and in a different county, was insufficient. Here the demand must be understood to have been made by the attorney in person, if that is necessary, or in such other form as the attorney of the party is authorized to adopt.

*Exceptions overruled.*